**J.I. CASE COMPANY and J.I. Case Credit Corporation, Appellants,**

v.

**BORG–WARNER ACCEPTANCE CORPORATION, Appellee.**

Court of Appeals of Kentucky.

Sept. 30, 1983.

Original Opinion Withdrawn and Reissued Feb. 10, 1984.

As Modified on Rehearing Feb. 29, 1984.

Discretionary Review Denied by Supreme Court June 11, 1984.

.Paul E. Braden, Braden & Glastetter, Corbin, for appellants.

Boyd F. Taylor, Taylor & Jensen, London, for appellee.

Before HAYES, C.J., and McDONALD and REYNOLDS, JJ.

McDONALD, Judge:

This appeal arises out of a controversy between appellants, J.I. Case Company, a manufacturer of farm equipment, and its financing affiliate, J.I. Case Credit Corporation, and the appellee, Borg-Warner Acceptance Corporation.

Island Equipment Company, a Kentucky Corporation, was a farm equipment dealer for Case in London, Kentucky. Pursuant to a written agreement between Island and Case, Island was authorized to sell Case's products for cash.

Included among Island's inventory of Case equipment on February 19, 1979, were the two pieces of farm equipment which have caused the controversy in this case: a new Case model 508C tractor-loader/backhoe (S/N 9003268) and a used Case model 350 crawler/dozer (S/N 3058759). These items were manufactured by Case and sold to Island for resale. The sales to Island were made pursuant to a Wholesale

Financing and Security Agreement of the aforementioned date between Case and Island, whereby Case retained a security interest in the two items as well as in all of Island's inventory, repossessions and proceeds. Case perfected its security interest by filing in the Laurel County Court on February 27, 1979, a financing statement covering the inventory.

On February 28, 1980, and June 4, 1980, Island sold the above two pieces of equipment to two customers. The purchasers executed retail installment contracts which Island assigned to Borg-Warner Acceptance Corporation, and financing statements were filed in favor of Borg-Warner.

Subsequently, both purchasers defaulted on their retail installment contracts. Borg-Warner repossessed the two pieces of equipment and returned them to Island's place of business. Borg-Warner did not mark the two pieces of equipment to differentiate them in any way from the remaining inventory of Island, nor did it file against Island or make any further notification to anyone of a claim against the two pieces of equipment.

Shortly thereafter Island Equipment, Inc. defaulted on its obligations to Case. Case filed an action against Island in the United States District Court for the Eastern District of Kentucky and obtained a writ of possession authorizing Case and Case Credit to take possession of all Case's equipment in Island's possession, including the two pieces of equipment described above. Case obtained possession of the equipment by authority of the writ.

Subsequently, asserting its own security interest in the equipment, Borg-Warner made demand upon Case to surrender to Borg-Warner the two pieces of equipment. Upon Case's refusal to do so Borg-Warner instituted an action in the Laurel Circuit Court claiming, as against Island, that Island owed the balance due on the contracts in default in the sum of $37,017.12, and as to Case and Case Credit, that by virtue of the writ of possession Case and Case Credit had converted the equipment and were liable for the amount of the claim against

Island. Case and Case Credit answered and counterclaimed to have their liens adjudged first and prior. Borg-Warner moved for a summary judgment against Case and Case Credit.

On January 20, 1982, the trial court granted Borg-Warner's motion for summary judgment. The court stated in its order that the only issue presented was the priority of the liens. It adjudged Borg-Warner's lien to be first and prior and ordered that it recover from Case and Case Credit the sum of $38,124.54 plus costs and interest. J.I. Case Company and J.I. Case Credit Corporation appeal from said summary judgment.

The Uniform Commercial Code as adopted in K.R.S. 355.9–306(2) provides:

> Except where this article otherwise provides, a security interest continues in collateral notwithstanding sale, exchange, or other disposition thereof by the debtor unless his action was authorized by the secured party in the security agreement or otherwise, and also continues in any identifiable proceeds including collections received by the debtor.

■ There is no question that the security agreement between Case and Island authorized Island to make sales for cash. Therefore, pursuant to K.R.S. 355.9–306(2), when the items of equipment were sold to bona fide purchasers and left the inventory of Island, the lien of Case in the said equipment at that point ceased to exist. *Universal CIT Credit Corporation v. Middlesboro Motor Sales, Inc.*, Ky., 424 S.W.2d 409 (1968); *Cessna Finance Corporation v. Skyways Enterprises*, Ky., 580 S.W.2d 491 (1979). Appellants have conceded that when the equipment left the premises of Island after having been sold, Case's lien in the equipment was released.

K.R.S. 355.9–308 gave to Borg-Warner priority over Case in the chattel paper assigned to Borg-Warner by Island. That statute provides, in part:

> A purchaser of chattel paper who gives new value and takes possession of it in the ordinary course of his business has

priority over a security interest in chattel paper which is claimed merely as proceeds of inventory subject to a security interest, even though he knows that the specific paper is subject to the security interest.

■ Therefore, when the items of equipment were sold and Case's lien in the equipment was released, Borg-Warner, pursuant to K.R.S. 355.9–308, obtained priority in the chattel paper executed by the purchasers of the equipment to Island. Case retained a secondary security interest in the chattel paper as proceeds of the equipment.

When the equipment was repossessed, Case's lien in the equipment again came into being pursuant to K.R.S. 355.9–306(5)(a), which provides:

(5) If a sale of goods results in an account or chattel paper which is transferred by the seller to a secured party, and *if the goods are returned to or are repossessed by the seller or the secured party,* the following rules determine priorities:

(a) If the goods were collateral at the time of sale for an indebtedness of the seller which is still unpaid, *the original security interest attaches again to the goods and continues as a perfected security interest if it was perfected at the time when the goods were sold.* If the security interest was originally perfected by a filing which is still effective, nothing further is required to continue the perfected status; in any other case, the secured party must take possession of the returned or repossessed goods or must file. [Emphasis ours.]

■ In the present case the sale of the two pieces of equipment resulted in chattel paper executed by the purchasers of the equipment to Island, which chattel paper was transferred by Island, the seller, to Borg-Warner, a secured party. The goods were repossessed by Borg-Warner and returned to the inventory of Island. Therefore, according to K.R.S. 355.9–306(5)(a), since the goods were collateral for the indebtedness of Island to Case which was still unpaid when they were returned to

Island's inventory, the original security interest of Case and Case Credit attached again to the goods and continued as a perfected security interest because it was perfected at the time the goods were sold. *See also* D. Leibson and R. Nowka, *The Uniform Commercial Code of Kentucky* § 8.4(D) at 789 (1983) which states: "If the goods sold secure an obligation of the seller to the secured party which remains unpaid at the time the goods are repossessed or returned, the original security interest reattaches to the goods pursuant to K.R.S. 355.9–306(5)(a)."

■ However, K.R.S. 355.9–306(5)(b) controls the outcome of this case by establishing priority between Case's lien in the equipment which reattached upon repossession according to K.R.S. 355.9–306(5)(a), and Borg-Warner's lien in the chattel paper pursuant to K.R.S. 355.9–308. This statute has the effect of maintaining for Borg-Warner the same priority in the equipment as it possessed in the chattel paper pursuant to K.R.S. 355.9–308. K.R.S. 355.9–306(5)(b) states:

An unpaid transferee of the chattel paper [Borg-Warner] has a security interest in the goods against the transferor. Such security interest is prior to a security interest asserted under paragraph (a) to the extent that the transferee of the chattel paper was entitled to priority under K.R.S. 355.9–308.

The above statute gives Borg-Warner priority in the equipment inasmuch as it had priority in the chattel paper by virtue of K.R.S. 355.9–308. Therefore, the lien of Borg-Warner obtained by K.R.S. 355.9–306(5)(b) is superior to the lien of Case which reattached pursuant to K.R.S. 355.9–306(5)(a) *even though Borg-Warner's lien had become unperfected as to the goods. See,* in this regard, G. Gilmore, *Security Interests in Personal Property* § 27.5 at 738–39 (1965):

Although § 9–306(5) does not make the point expressly, it is believed that the transferee [Borg-Warner], even though his interest has become unperfected, retains his priority over the inventory lend-

er [Case], even though the latter's interest continues perfected.

Appellants argue they are entitled to priority by virtue of K.R.S. 355.9–306(5)(d); however, this section of the statute is inapplicable to this fact situation. It provides:

(d) A security interest of an unpaid transferee asserted under paragraph (b) or (c) must be perfected for protection against creditors of the transferor and purchasers of the returned or repossessed goods.

Although Case is a creditor of Island, giving rise to the implication that Borg-Warner must therefore perfect its security interest in the equipment to retain its priority over the security interest of Case, this is not the intent of the statute. K.R.S. 355.9–306(5)(d) applies only in the situation of priority disputes between Borg-Warner and creditors whose interests would arise after repossession of the goods. Gilmore, *supra*, states at § 27.5, p. 739:

The chattel paper transferee [Borg-Warner] took priority over the inventory lender [Case] at the time of the chattel paper transaction; paragraph (b) continues those priorities with respect to the goods; lapse of the transferee's interest should not disturb the priorities. That this was the intended result is quite clear from paragraph (d) of subsection (5), which provides that a transferee's claim under paragraph (b) "must be perfected for protection against creditors of the transferor and purchasers of the returned or repossessed goods." The apparent inference is that the transferee's [Borg-Warner] claim need not be perfected for protection against the paragraph (a) claim of the inventory lender [Case] who is not aptly described as either a "creditor" or a "purchaser of the ... goods."

Therefore, we hold that Borg-Warner's security interest in the equipment had priority over that of Case, and we hereby affirm the decision of the trial court.

■ Case has argued herein that the trial court impliedly found it guilty of a conversion in accordance with Borg-Warner's complaint. The trial court cited in this regard the case of *McKenzie v. Oliver*, Ky., 571 S.W.2d 102 (1978). We hold that the case herein is strictly controlled by the provisions of the Uniform Commercial Code and that the tort of conversion does not apply to the facts of this case.

The judgment is affirmed.

All concur.